130 P.3d 389 (2006)
STATE of Washington, Respondent,
v.
Charles Verdel FARNSWORTH, Appellant.
Nos. 32322-2-II, 32903-4-II.
Court of Appeals of Washington, Division 2.
March 7, 2006.
*392 Linda J. King, Department of Assigned Counsel, Tacoma, WA, for Appellant.
Todd Andrew Campbell, Pierce Co. Pros. Attorneys Office, Gerald Allen Horne, Tacoma, WA, for Respondent.

PART PUBLISHED OPINION
HUNT, J.
¶ 1 Charles Farnsworth appeals two first degree robbery convictions and his exceptional sentence. He argues the trial court (1) violated his right to a speedy trial under CrR 3.3; (2) abused its discretion by suppressing evidence in response to the State's discovery violation; (3) incorrectly calculated his offender score; (4) impermissibly found facts to support his exceptional sentence, contrary to Blakely;[1] and (5) violated his right to due process of law. He further argues that his trial counsel rendered ineffective assistance.
¶ 2 In a separate personal restraint petition (PRP), consolidated with his direct appeal, Farnsworth argues that (1) he did not receive proper notice of his right to a speedy trial, and (2) CrR 3.3 unconstitutionally placed an unfair burden on him by requiring timely objection to his trial date to preserve his speedy trial rights under the rule.
¶ 3 We deny the State's motion to dismiss Farnsworth's PRP, deny Farnsworth's PRP, affirm his convictions, vacate his exceptional sentence, and remand for resentencing.

FACTS

I. THE ROBBERIES
¶ 4 On March 9, 2004, Charles Farnsworth used a handgun to rob $250 from a Subway restaurant clerk. The clerk described the robber as a white male, between 40 and 50 years old, wearing a hat, black and blue square glasses, a black and blonde wig, a nose brace that covered his face, and a grey jumpsuit.
¶ 5 Less than two hours later, a Domino's Pizza restaurant clerk reported to police that he had been robbed at gunpoint. This clerk described the robber as a white male in his early forties, wearing a hat, a black and grey wig, a green jumpsuit, black gloves, and pieces of tape or band-aids across his nose and cheek. The clerk saw the man drive off in a brown-colored vehicle. When the police arrived, they spotted a four-door gold Chrysler sedan apparently abandoned in a turn lane down the street.
¶ 6 The officers approached the car, looked inside, and saw a black/grey wig and black gloves in plain view. The officers discovered that the vehicle was registered to Adam Homer, who had loaned or sold it to Charles Farnsworth.

II. INVESTIGATION
¶ 7 On March 11, 2004, both restaurant clerks viewed six photos of white males, aligned side by side. The Subway clerk identified Farnsworth as the robber; the Domino's Pizza clerk was unable to make a positive identification.
¶ 8 On March 12, 2004, the officers executed a search warrant for Farnsworth's car, in which they discovered a wig, gloves, used band aids, and a return receipt from Shuck's Auto Supply. According to Shuck's records, a customer named "Charles Farnsworth" had returned an oil filter on March 10, 2004.
¶ 9 On March 15, 2004, the officers arrested Farnsworth for two counts of robbery and presented him with a search warrant for his home and a blood sample. They also detained Melody Norman, Farnsworth's girlfriend, for questioning and presented her with the search warrant as well. The officers read their Miranda[2] rights to Farnsworth and Norman, who acknowledged that *393 they understood. In Farnsworth's home, the officers found several pairs of blue glasses, a roll of white tape, and a first aid kit.
¶ 10 The officers took Farnsworth and Norman to the police station for an interview. One officer gave Farnsworth a written copy of his Miranda rights and read them to him. Farnsworth initially denied involvement in the robberies. But when the officers confronted him with evidence they had discovered, Farnsworth confessed that he had committed the robberies, told the officers details of the robberies, and explained where they could find the pellet gun he had used in the robberies. After reading Farnsworth his Miranda rights again, the officers recorded his confession.
¶ 11 Norman also agreed to provide the police with a recorded statement. Following a reading of her Miranda rights, she stated that Farnsworth had mentioned that he wanted to commit a robbery and, after the fact, told her that he had robbed Subway and a pizza place. Like Farnsworth, she changed the details of her story several times before the officers recorded her statement.

III. PROCEDURE

A. PRETIAL CHRONOLOGY
¶ 12 On March 17, 2004, the State charged Farnsworth with two counts of first degree robbery. Following arraignment that same day, the superior court scheduled trial to begin on May 4. Farnsworth remained in custody. He voiced no objection to the trial date.
¶ 13 On April 8, at the State's request, the trial court ordered a mental competency examination and stayed the proceedings pending this examination. Farnsworth did not object.
¶ 14 On June 10, the trial court found Farnsworth to be competent, and then reset trial for July 27. Farnsworth did not object to this new trial date.

B. Motions to Dismiss

1. Cr R 3.3
¶ 15 On the day set for trial, July 27, 2004, Farnsworth moved to dismiss the charges because his trial did not commence within the 60-day period required under CrR 3.3. He contended that by the time of the July 27 rescheduled trial date, 69 days had passed, since his arraignment, excluding the time for his competency proceedings.
¶ 16 The trial court denied Farnsworth's motion to dismiss, ruling that because Farnsworth had failed to object within 10 days of notice of the July 27 trial date, he had waived his right to object under CrR 3.3.

2. Discovery; Exclusion of Norman's Statement
¶ 17 Farnsworth also moved to dismiss the charges based on the State's alleged discovery violation. He asserted that on May 26, 2004, he had requested a transcript of Norman's interview, implicating him in the robberies. He acknowledged that the State had already provided him with a copy of the police report, which summarized Norman's interview. But Farnsworth contended that the police report summary might have been inaccurate or incomplete.
¶ 18 The State responded that it had attempted to locate Norman's taped statement. But several detectives had worked on the case, and the officers with whom Norman had spoken were unaware of her recorded statement. The State denied that the police had willfully violated its discovery obligation, explaining that: (1) the police had nothing to hide because Norman's statement about Farnsworth's culpability in the robberies was not exculpatory; (2) as soon as the State learned that the tape existed, it had given Farnsworth a copy of the transcript; and (3) Farnsworth suffered little, if any, prejudice from the lack of this inculpatory transcript because he had already confessed and provided details about the robberies.
¶ 19 The trial court ruled that (1) the State's failure to produce Norman's taped statement earlier had not prejudiced Farnsworth; (2) the police report summary and transcript of Norman's statement did not differ from her taped statement, except for minor details; and (3) the police report included enough information in its summary of Norman's statement to prevent prejudice to *394 Farnsworth. The court denied Farnsworth's request to dismiss the case.
¶ 20 The trial court also ruled, however, that the State could not call Norman as a witness or introduce evidence of her statement to police, including her name. Farnsworth did not object to this restriction and indicated he did not intend to call Norman as a defense witness.

C. CrR 3.5 Hearing and Stipulated Bench Trial
¶ 21 In July, the trial court conducted a CrR 3.5 hearing to determine the admissibility of Farnsworth's confession, and found that Farnsworth had voluntarily confessed to the two robberies without coercion, and ruled his confession admissible. Thereafter, Farnsworth signed a stipulation waiving his right to a jury, waiving his right to confront State witnesses and to call witnesses to testify on his behalf, and agreeing to a bench trial based on the facts in the police reports, its attached materials, and exhibits.
¶ 22 On August 2, 2004, just before the trial court rendered its verdict and without acting through counsel, Farnsworth submitted his own written statement, asking the court to revoke the stipulated trial and to provide additional time for him to call Norman as a witness. Defense counsel explained that (1) Farnsworth's statement was not a motion; and (2) he and Farnsworth had considerable disagreement over trial strategy.
¶ 23 The trial court denied Farnsworth's request, and rendered its verdict, finding Farnsworth guilty on both counts of first degree robbery.

D. Sentencing
¶ 24 At sentencing in September, the State argued that several out-of-state convictions should be included in Farnsworth's offender score. The trial court used four convictions: one California vehicular manslaughter conviction, one Utah federal firearm possession conviction, and the two current Washington first degree robbery convictions.
¶ 25 Farnsworth conceded that his California conviction was based on a statute identical to an equivalent Washington criminal statute. The trial court compared the Utah indictment, conviction, and statute with Washington's equivalent crime and found these statutes and crimes comparable.
¶ 26 Calculating Farnsworth's offender score at four, the court sentenced him to 68-months confinement, the highest end of the standard sentencing range.
¶ 27 Farnsworth appeals his convictions and sentence.

E. Personal Restraint Petitions
¶ 28 In November 2004, Farnsworth also filed a PRP with the Washington Supreme Court. The State moved to dismiss because it was his second PRP,[3] filed without showing good cause. The Supreme Court transferred Farnsworth's PRP to our court, and we consolidated it with his direct appeal.

ANALYSIS

I. CrR 3.3, SPEEDY TRIAL RULE
¶ 29 Farnsworth first argues that the trial court denied his right to a speedy trial[4] because it failed to begin his trial within 30 days after the excluded competency hearing period, as required under CrR 3.3(b)(5). We disagree.

A. Rule Interpretation
¶ 30 We interpret court rules in the same manner that we interpret legislatively drafted statutes. State v. Carson, 128 Wash.2d 805, 812, 912 P.2d 1016 (1996). Statutory construction and interpretation are questions of law, which we review de novo. *395 Pasco v. Pub. Empl. Relations Comm'n, 119 Wash.2d 504, 507, 833 P.2d 381 (1992).
¶ 31 As with statutes, we must give effect to the plain meaning of a rule's language. Dep't of Licensing v. Lax, 125 Wash.2d 818, 822, 888 P.2d 1190 (1995). When construing a statute, or a rule, we read it in its entirety, giving effect to all language so that no portion is rendered meaningless or superfluous. State v. Keller, 143 Wash.2d 267, 277, 19 P.3d 1030 (2001). In addition, we view each provision in relation to other provisions and harmonize them. Keller, 143 Wash.2d at 277, 19 P.3d 1030.
¶ 32 If a criminal statute or rule is ambiguous, however, the rule of lenity requires us to construe it in favor of the accused. In re Post Sentencing Rev. of Charles, 135 Wash.2d 239, 249-50, 955 P.2d 798 (1998); State v. Roberts, 117 Wash.2d 576, 586, 817 P.2d 855 (1991). But such is not the case here.

B. CrR 3.3 Excluded Period and New Trial Date
¶ 33 Under CrR 3.3(c)(1), an incarcerated criminal defendant generally must be brought to trial no later than 60 days after arraignment. There is, however, no constitutional mandate that a trial be held within 60 days of arraignment. State v. Terrovona, 105 Wash.2d 632, 651, 716 P.2d 295 (1986). On the contrary, CrR 3.3(c)(2) provides a list of exceptions that may delay or extend the trial date beyond 60 days. See CrR 3.3(b)(5) (Excluded Periods); CrR 3.3(d) (Loss of Right to Object); CrR 3.3(f) (Continuances); and CrR 3.3(g) (Cure Period).
¶ 34 CrR 3.3(b)(5) provides:
If any period of time is excluded pursuant to section (e), the allowable time for trial shall not expire earlier than 30 days after the end of that excluded period.
(Emphasis added.) Under its plain language, CrR 3.3(b)(5) allows a trial court to extend the trial start date at least 30 days beyond the end of an excluded period. Furthermore, contrary to Farnsworth's assertions, beginning a trial more than 30 days after the end of a CrR 3.3 excluded period does not necessarily violate the speedy trial rule.
¶ 35 Here, the trial court initially scheduled trial for May 4, 2004. But between April 8, 2004, and June 10, 2004, Farnsworth underwent a mental competency evaluation, an excluded period under CrR 3.3(e)(1). Trial began trial on July 27, 2004, which, as Farnsworth contends, was more than 30 days after the June 10 end of the excluded period.
¶ 36 Nonetheless, Farnsworth was not thereby entitled to dismissal for violation of CrR 3.3(b)(5) because he waived his right to claim a violation of the rule when he failed to object to the July 27 trial date within 10 days of its being set. CrR 3.3(d)(3).

C. Loss of Right to Object to New Trial Date
¶ 37 But Farnsworth argues that he did not waive his right to a speedy trial when he failed to object to the trial date within 10 days of its being set because CrR 3.3(d) is ambiguous and difficult to apply. We disagree.
¶ 38 CrR 3.3(d) is not ambiguous. CrR 3.3(d) expressly provides that a party must object within 10 days after notice of the trial date, and "[a] party who fails, for any reason, to make such a motion shall lose the right to object." CrR 3.3(d)(3). Thus, even if the trial date is not within the time-frame prescribed in CrR 3.3, absent a timely objection, the trial date set by the trial court becomes the last allowable trial date (subject to certain exceptions, which are not at issue here). See CrR 3.3(d)(4). See also State v. Harris, 130 Wash.2d 35, 44-45, 921 P.2d 1052 (1996) (if a defendant does not timely object, his speedy trial rights under the court rules are deemed waived).[5]
¶ 39 We hold, therefore, that because Farnsworth failed to object within 10 days of notice of his trial date, the trial court properly *396 denied his motion to dismiss under CrR 3.3.

II. DISCOVERY VIOLATION
¶ 40 Farnsworth next argues that the trial court abused its discretion by suppressing Norman's statement, instead of dismissing his case, when the State failed to provide a copy of the transcript and tape recording of her police interview. He contends the trial court thereby forced him to choose between his constitutional rights to a speedy trial and to effective assistance of counsel. We disagree.

A. Standard of Review
¶ 41 Trial courts have wide latitude in imposing sanctions for discovery violations. State v. Dunivin, 65 Wash.App. 728, 731, 829 P.2d 799 (1992). We will not disturb the trial court's denial of a motion to dismiss for discovery violations unless the denial constitutes a manifest abuse of discretion. State v. Woods, 143 Wash.2d 561, 582, 23 P.3d 1046 (2001). Such is not the case here.
¶ 42 Dismissal is an extraordinary remedy, available only when there has been prejudice to the accused that materially affected his right to a fair trial. Woods, 143 Wash.2d at 582, 23 P.3d 1046. Thus, before a trial court exercises its discretion to dismiss,
a defendant must prove that it is more probably true than not that (1) the prosecution failed to act with due diligence, and (2) material facts were withheld from the defendant until shortly before a crucial stage in the litigation process, which essentially compelled the defendant to choose between two distinct rights.
Woods, 143 Wash.2d at 583, 23 P.3d 1046.[6] Farnsworth failed to meet this burden.

B. No Showing of Prejudice
¶ 43 Neither the tape recording nor the transcript of Norman's statement[7] contained a "material fact . . . withheld from [Farnsworth]" because Farnsworth had timely received a comprehensive summary of Norman's statement, in Detective Hall's police report. Woods, 143 Wash.2d at 583, 23 P.3d 1046. The trial court compared the police report summary and the transcript and found them to be similar, except for minor, non-material details.[8] As in Woods, neither the tape recording nor the transcript interjected new material facts into the proceedings. See Woods, 143 Wash.2d at 584, 23 P.3d 1046.
¶ 44 Moreover, after reviewing the transcript of Norman's taped statement, Farnsworth did not complain to the trial court that, as a result, he needed additional time to prepare for trial. On the contrary, he told the trial court that he did not intend to call Norman as a witness.
¶ 45 Having failed to meet the second prong of the Price rule, Farnsworth has not shown that he was forced to choose between two constitutional rights, or that either right was thereby compromised. We hold, therefore, that the trial court did not err denying his motion to dismiss.[9]

III. OFFENDER SCORE
¶ 46 Farnsworth next argues that the trial court erred when it used a 1994 federal *397 firearm possession conviction from Utah in calculating his offender score at four.[10] He contends that the federal criminal statute for firearm possession was not comparable to Washington's firearm possession statute. We agree to the extent that the record lacks an adequate showing of comparability.
¶ 47 Farnsworth also argues that the trial court engaged in unconstitutional fact finding when it compared the federal statute on which his Utah conviction was based to Washington's equivalent statute, thereby violating his sixth amendment rights[11] under Blakely. This argument fails. We address this latter argument first.

A. Fact Finding  Prior Felony Predicate for Unlawful Firearm Possession
¶ 48 The United States Supreme Court specifically excluded findings of prior convictions from its Blakely holding that juries must decide aggravating facts supporting a sentence above the standard range. State v. Hughes, 154 Wash.2d 118, 137, 110 P.3d 192 (2005). Thus, judges may decide whether a defendant had a prior conviction. Hughes, 154 Wash.2d at 137, 110 P.3d 192; see also In re Personal Restraint of Lavery, 154 Wash.2d 249, 257, 254, 111 P.3d 837 (2005) (whether a defendant has a prior conviction need not be presented to a jury and proven beyond a reasonable doubt); State v. Wheeler, 145 Wash.2d 116, 121, 34 P.3d 799 (2001) (court need only find, by the preponderance of the evidence, that a prior conviction existed).
¶ 49 A trial court judge may calculate a defendant's offender score without violating Farnsworth's constitutional right to a jury trial. As long as the trial court determines that the relevant facts in a foreign court's record have been proven beyond a reasonable doubt, Lavery, 154 Wash.2d at 258, 111 P.3d 837, the trial court must conduct a comparability analysis[12] and include a prior foreign conviction in calculating the defendant's offender score.
¶ 50 We hold that the trial court did not violate Farnsworth's sixth amendment right under Blakely by engaging in a factual comparability analysis when it calculated his offender score for sentencing.
¶ 51 A defendant's offender score determines the range that sentencing courts may use when determining his sentence. RCW 9.94A.589. In determining an offender score, the sentencing court must include all current and prior convictions. RCW 9.94A.589. To include prior convictions in an offender score, the sentencing court must find their existence by only a preponderance of the evidence. Wheeler, 145 Wash.2d at 121, 34 P.3d 799. If the crimes are comparable, a sentencing court must treat a defendant's out-of-state conviction the same as a Washington conviction. Lavery, 154 Wash.2d at 254, 111 P.3d 837.

B. Comparability of Foreign Convictions
¶ 52 Our Supreme Court has devised a two-part test to determine whether a foreign conviction is comparable to a Washington offense and, therefore, whether the *398 defendant could have been convicted in Washington had he committed the same acts here. State v. Morley, 134 Wash.2d 588, 605-606, 952 P.2d 167 (1998) (citing State v. McCorkle, 88 Wash.App. 485, 495, 945 P.2d 736 (1997)). Under this two-part test, we include foreign convictions in the defendant's offender score if there is either legal or factual comparability. Lavery, 154 Wash.2d at 255, 111 P.3d 837. Courts must first compare the elements of the crimes. Lavery, 154 Wash.2d at 255, 111 P.3d 837.

1. Legal
¶ 53 Legal comparability means that the elements of a foreign conviction are substantially similar to the elements of a Washington crime. Lavery, 154 Wash.2d at 255, 111 P.3d 837. Thus, where a foreign crime provides alternative elements, it must contain all the elements of its Washington counterpart to be considered comparable. State v. Russell, 104 Wash.App. 422, 442, 16 P.3d 664 (2001).
¶ 54 If the elements of the foreign crime are not substantially similar to the analogous Washington crime, or if the foreign law is broader than Washington's definition of a particular crime, the sentencing court may also look to factual comparability, the second prong of the test. Lavery, 154 Wash.2d at 255-56, 111 P.3d 837; Morley, 134 Wash.2d at 606, 952 P.2d 167.

2. Factual
¶ 55 Factual comparability requires the sentencing court to determine whether the defendant's conduct, as evidenced by the indictment or information, Morley, 134 Wash.2d at 606, 952 P.2d 167, or the records of the foreign conviction, Lavery, 154 Wash.2d at 255, 111 P.3d 837, would have violated the comparable Washington statute. The underlying facts in the foreign record must be admitted, stipulated to, or proven beyond a reasonable doubt. See Lavery, 154 Wash.2d at 258, 111 P.3d 837.[13]
¶ 56 If in convicting the defendant, the foreign court necessarily found facts that would support each element of the comparable Washington crime, the foreign conviction counts toward the defendant's offender score. Russell, 104 Wash.App. at 441, 16 P.3d 664. But if facts or allegations contained in the foreign record do not directly relate to the elements of the charged foreign crime, such facts or allegations may not have been sufficiently proven to qualify for the conviction's inclusion in the offender score. Lavery, 154 Wash.2d at 255, 111 P.3d 837.
¶ 57 We turn now to the application of these standards to Farnsworth's prior federal firearm possession conviction in Utah.

C. Prior Utah Conviction
¶ 58 Farnsworth's federal Utah indictment alleged:
[H]aving been convicted of a crime punishable by imprisonment for more than one (1) year, [he] did knowingly possess in and affected interstate commerce a firearm, namely a Phoenix Arms .25 caliber pistol; all in violation of 18 U.S.C. 922 §§ (g)(1) and 924(a)(2).
Plaintiff's Exhibit 4 (emphasis added). We read together these two federal statutes recited in the indictment.[14]
¶ 59 18 U.S.C. 922 § (g)(1), provides:
It shall be unlawful for any person
(1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year;
. . . .
to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which *399 has been shipped or transported in interstate or foreign commerce.
(Emphases added.)
¶ 60 And 18 U.S.C. § 924(a)(2) (1993) provides: "Whoever knowingly violates subsection. . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both."

1. Legal comparability
¶ 61 Washington's comparable crime, unlawful firearm possession, is found in RCW 9.41.040 (1993), which provides,
A person is guilty of the crime of unlawful possession of a short firearm or pistol, if, having previously been convicted or, as a juvenile, adjudicated in this state or elsewhere of a crime of violence or of a felony in which a firearm was used or displayed, the person owns or has in his possession any short firearm pistol.
RCW 9.41.040(1) (1993).
¶ 62 Under the first prong of the Morley test, supra, the federal and Washington statutes were not legally comparable. The federal statute is broader than the former version of Washington's statute because it prohibits firearm or ammunition possession by anyone convicted of a felony punishable by one year of imprisonment. In contrast, the Washington statute prohibited possession of only the weapon, with no mention of ammunition.

2. Factual comparability
¶ 63 Thus, we next address the second prong of the Morley test, factual comparability. In addition to the foreign statute's language, the sentencing court may look at the foreign indictment to determine comparability for offender score purposes. See Morley, 134 Wash.2d at 606, 952 P.2d 167. Farnsworth's federal Utah indictment and verdict forms state that the jury found him guilty of "knowingly" possessing a Phoenix Arms pistol in and affecting interstate commerce while having a prior felony conviction.[15]
¶ 64 First, both the federal and Washington statutes' "firearm" possession requirements were factually comparable as applied here. Although the federal statute additionally included possession of "ammunition" as a way to commit the crime, the indictment clearly charged Farnsworth with possession of only a firearm, not ammunition.[16] Thus, the greater breadth of the federal statute does not render Farnsworth's federal conviction incomparable with its Washington analogue.
¶ 65 Second, the facts required to establish the Washington statute's "knowledge" element were legally comparable to the federal statute's requirements. Both the federal and Washington statutes required knowledge of possession of the firearm but not knowledge of the illegality of such possession.[17] In convicting Farnsworth, the Utah jury necessarily found that he had knowledge of firearm possession, beyond a reasonable doubt.
¶ 66 Lastly, both statutes required proof of a prior felony conviction. The federal statute required proof of any prior crime punishable by one year or more. The Washington statute required a prior crime of violence or a felony in which a firearm was used. The federal law is broader than Washington's law, and the Utah indictment did not specify what prior felony conviction *400 the Utah court used to convict Farnsworth for unlawful firearm possession. In order to use Farnsworth's Utah conviction in calculating his offender score, however, the "prior felony conviction" used for his Utah conviction had to be comparable to the "prior conviction" element under Washington's unlawful firearm possession law.
¶ 67 The underlying facts of an out-of-state conviction must be admitted, stipulated, or proved beyond a reasonable doubt. See Lavery, 154 Wash.2d at 258, 111 P.3d 837.[18]
Where the foreign statute is broader than Washington's, [the sentencing court's] examination [of the foreign record to determine comparability] may not be possible because there may have been no incentive for the accused to have attempted to prove that he did not commit the narrower offense.
Lavery, 154 Wash.2d at 257, 111 P.3d 837.
¶ 68 Here, the sentencing court first had to determine which specific felony, if any, the Utah court used to establish Farnsworth's prior felony conviction element under 18 U.S.C. 922 § (g)(1) (1993). The sentencing court next had to determine whether Farnsworth had admitted or stipulated to having been convicted of this specific prior felony or whether the Utah court determined that Farnsworth had previously been convicted of this specific felony. Finally, the sentencing court had to determine whether the specific prior felony used in the Utah case would have satisfied the prior conviction element of RCW 9.41.040(1) (1993). Otherwise, the sentencing court could not include Farnsworth's Utah conviction as a prior conviction for offender score purposes here.[19]
¶ 69 Farnsworth admitted that he has a prior California conviction for vehicular manslaughter and that this conviction was "a prior crime of violence" under RCW 9.41.040(1) (1993).[20] If the Utah court used this California manslaughter conviction in establishing Farnsworth's prior felony conviction element for his federal offense, then the sentencing court here could include this Utah conviction in calculating Farnsworth's offender's score. We cannot, however, discern these facts from the record before us, nor does the record show how or whether the sentencing court was able to determine these necessary facts.[21]
¶ 70 Therefore, although we affirm Farnsworth's convictions, we remand to the trial court (1) to review the Utah federal court record to determine what prior felony conviction the Utah court used as the predicate offense to convict Farnsworth of unlawful firearm possession; (2) to make appropriate comparability determinations, consistent with this opinion; and (3) to recalculate Farnsworth's offender and to resentence him if necessary.
*401 ¶ 71 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: BRIDGEWATER, J., and QUINN-BRINTNALL, C.J.
NOTES
[1] Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] We previously dismissed Farnsworth's earlier May 17, 2004 PRP, docket number 31870-9-II, because he had failed to provide adequate support for his issues and he had another adequate remedy available, namely a direct appeal.
[4] Persons accused of crimes have a right to a speedy public trial. WASH. CONST. art. I, § 22. Although Washington's Constitution does not prescribe a specific time period for a speedy trial, our Supreme Court has adopted the Superior Court Criminal Rules (CrR) to govern all criminal proceedings, including the time for trial. CrR 1.1.
[5] Moreover, for more than 20 years, defendants have carried the burden to object within 10 days of notice of the trial date in order to challenge the time for trial under CrR 3.3. See State v. Fry, 30 Wash.App. 638, 641, 638 P.2d 585 (1981). The 2003 amendments to the Superior Court Criminal Rules did not significantly alter this requirement.
[6] In Price, the court held that a defendant "must prove by a preponderance of the evidence that interjection of new facts into the case when the State has not acted with due diligence will compel him to choose between prejudicing either of these rights." State v. Price, 94 Wash.2d 810, 814, 620 P.2d 994 (1980).
[7] The gist of Norman's statement was that Farnsworth had told her in advance that he wanted to commit a robbery and that he had confessed to her afterwards that he committed both the Subway and Pizza Hut robberies charged here.
[8] Although the tape recording itself is not part of the record on appeal, our independent review of the tape's transcript and the police summary of Norman's statements supports the trial court's finding.
[9] Farnsworth mentions in passing that the trial court could have dismissed under CrR 8.3 for case mismanagement. But he neither specifically raised mismanagement below nor requested dismissal on this ground. Moreover, he does not support this argument on appeal with adequate citation to authority. RAP 2.5; RAP 10.3; see Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992). Therefore, we do not consider this issue further.
[10] Farnsworth does not challenge the other three convictions used to calculate his offender score  the two current robberies and the prior 1984 California conviction for vehicular manslaughter.

During oral argument, the State mentioned that the sentencing court excluded, and therefore, used in calculating Farnsworth's offender score, other out-of-state convictions, including possession of an obstructive device, possession of a firearm, bail jump, credit card fraud, escape from an Attorney General, and the State did not appeal the court's decision.
[11] U.S. CONST. amend. VI
[12] In his supplemental authority, Farnsworth also cites Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), where the defendant pleaded guilty to being a felon in possession of a firearm in violation of federal law. Under the Armed Career Criminal Act (ACCA), a person will be sentenced to a minimum of 15 years if he or she has three prior felony or drug offense convictions. The Supreme Court considered whether the sentencing court could look at state police reports or complaint applications to determine whether a guilty plea in a state court amounts to a burglary under ACCA. Neither Shepard nor Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (cited in Shepard), applies here. The Supreme Court construed federal law, not Washington law. Shepard, 544 U.S. at 19-20, 125 S.Ct. 1254. And here, we construe Washington, not federal, statutes. See Taylor, 495 U.S. at 602, 110 S.Ct. 2143.
[13] The Lavery court stated, "Any attempt to examine the underlying facts of a foreign conviction, facts that were neither admitted or stipulated to, nor proved to the finder of fact beyond a reasonable doubt in the foreign conviction, proves problematic." Lavery, 154 Wash.2d at 258, 111 P.3d 837.
[14] See United States v. Gorman, 312 F.3d 1159, 1163-64 (10th Cir.2002) (the government must prove that the defendant knowingly possessed a firearm under section 922).
[15] Although the federal statute included alternative elements, the indictment sufficiently specified the particular elements of the federal crime with which Farnsworth was charged.
[16] The federal statute required a connection to interstate commerce, while Washington's equivalent statute did not require this. But this requirement is a jurisdictional matter, not an element of the crime. In other words, the interstate commerce requirement would not have precluded a conviction in Washington, and it does not affect our comparability analysis here. See Morley, 134 Wash.2d at 606, 952 P.2d 167 (purpose is to see if defendant would have been convicted under Washington law).
[17] Compare State v. Sweeney, 125 Wash.App. 77, 83, 104 P.3d 46 (2005) (knowledge that possession was illegal is not an element), with United States v. Smith, 940 F.2d 710, 714 (1st Cir.1991) (government need not prove that defendant knew possession was illegal); compare State v. Semakula, 88 Wash.App. 719, 726-727, 946 P.2d 795 (1997) (defendant must know facts that make it illegal), with United States v. Santeramo, 45 F.3d 622, 624 (2nd Cir.1995) (cannot have possession unless person knew of its existence).
[18] In State v. Ortega, 120 Wash.App. 165, 84 P.3d 935 (2004), the defendant pleaded guilty to first degree child molestation. The sentencing court considered whether a prior Texas conviction for indecency with a child should count as a strike under Washington's Persistent Offender Accountability Act. Ortega, 120 Wash.App. at 168-69, 84 P.3d 935. Texas law required the child to be under 17 years old, whereas Washington required the child to be under age 12. Ortega, 120 Wash.App. at 172-73, 84 P.3d 935. Using the preponderance of the evidence standard, the sentencing court examined the Texas court record, determined that the child was 10 years old, and concluded that the Texas conviction could, therefore, count as a prior conviction under Washington law. Ortega, 120 Wash.App. at 168-69, 84 P.3d 935. Division Three, however, reversed Ortega's sentence, stating that the trier of fact must have found beyond a reasonable doubt the underlying facts of the prior conviction, facts specified in the indictment, judgment, jury instruction, and verdict. Ortega, 120 Wash.App. at 172, 84 P.3d 935.
[19] See also State v. Jackson, 129 Wash.App. 95, 108-09, 117 P.3d 1182 (2005) (published in part), in which we held that the Oregon criminal statute for unauthorized use of a vehicle appeared to cover a broader range of activity compared to Washington's equivalent statute. Therefore, we remanded to the trial court to determine whether, factually, the defendant's violation of the Oregon statute would have been a violation of Washington's equivalent statute.
[20] Manslaughter in the first and second degrees were also crimes of violence under RCW 9.41.010(2)(a) (1994).
[21] Although the Utah jury may have used Farnsworth's prior California vehicular manslaughter conviction as the predicate felony for finding him guilty of unlawful firearm possession, neither party submitted the Utah court's records, without which we cannot review this fact with the requisite certainty.