IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39453-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TREYTON X.L. MOONEYHAM, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, A.C.J. — Treyton Mooneyham appeals his conviction and sentence, raising three issues. First, he argues that he was denied due process of law when the trial court and State knowingly appointed defense counsel that was not qualified to represent him for a class B violent felony offense. Second, he contends the State failed to prove that his Idaho conviction for grand theft was comparable to a Washington felony for purposes of calculating his offender score. Finally, he claims certain legal financial obligations (LFOs) must be struck from his judgment and sentence due to subsequent changes in the law that apply to his case on appeal.

We affirm Mooneyham's conviction. The appointment of a public defender who was not qualified under CrR 3.1 and SID 14.2 to represent defendants charged with a

class B felony is a rule violation not a constitutional violation and Mooneyham failed to show that the error was not harmless.

We agree, however, that the State failed to show that Mooneyham's Idaho conviction was comparable to a Washington offense and we therefore remand for resentencing. At resentencing, the trial court can readdress any LFO issues.

BACKGROUND

Mooneyham was charged, by second amended information, with second degree assault (domestic violence), third degree malicious mischief (domestic violence), and other less serious offenses. At his bond hearing, he was appointed an attorney to represent him at public expense. In accordance with the "Indigent Defense Standards" section 14.2 (SID), the attorney declared to the court that as an attorney, he needed one more felony jury trial before he met the defense standards for class B violent offenses. Although the attorney did not initially meet the defense standards, he announced at a subsequent hearing that he had completed the necessary felony trials and had achieved class B status. At the time of Mooneyham's trial, his attorney was qualified under the rules.

At trial, a jury found Mooneyham guilty of second degree assault (domestic violence) and third degree malicious mischief (domestic violence), but acquitted him of the less serious offenses.

At sentencing, Mooneyham stipulated that he had two felony convictions from Idaho, one of which was for grand theft. Both convictions were included in his offender

2

score, calculated at "3." The court imposed several LFOs including a $1,000 fine, $100

DNA collection fee, and a $100 domestic violence penalty assessment. The judgment

and sentence were later amended to include a $500 crime victim penalty assessment.

Mooneyham appeals.

## ANALYSIS

1. QUALIFICATIONS OF COUNSEL

Mooneyham contends that by knowingly appointing an attorney who was initially

unqualified and acquiescing to that representation, the trial court deprived him of due

process of law. The State claims that Mooneyham's argument rests solely on counsel not

meeting the qualifications for indigent defense standards under SID 14.2, in violation of

CrR 3.1, and is therefore not a due process violation but instead an unpreserved rule

violation at most.

Generally, this court will "refuse to review any claim of error which was not

raised in the trial court." RAP 2.5(a). However, "we have discretion to consider

unpreserved claims even if they do not involve manifest constitutional errors." *State v.*

*Nelson*, 31 Wn. App. 2d 504, 510, 550 P.3d 529 (2024).

The trial court and State were both aware that Mooneyham's counsel was not

qualified when he was initially appointed. Despite this, neither party objected to the

appointment and the State thus contends we should consider the issue waived under RAP

2.5(a). Although the issue is unpreserved, we exercise our discretion to review it because

preserving the error would require either an objection from defense counsel about his own representation or an objection from Mooneyham.

Both the Washington State and United States Constitutions guarantee an accused the right to counsel. WASH. CONST. art. I, § 22; U.S. CONST. amend. VI. In particular, the Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. "This fundamental right is obligatory on states under the Fourteenth Amendment, and indigent defendants facing a criminal prosecution in state court have a right to counsel at all critical stages of the proceedings." *Davison v. State*, 196 Wn.2d 285, 293, 466 P.3d 231 (2020).

In addition to the constitutional standards, local governments have discretion regarding the method public defense services are provided, whether that is through "contract, assigned counsel, or a public defender office." *Id*. at 297. Cities and towns thus must "'adopt standards for the delivery of public defense services.'" *Id*. (quoting RCW 10.101.030). In particular, "[t]he legislature recommends that the [Washington State Bar Association's] standards governing indigent public defense . . . should serve as guidelines to local authorities in adopting their own [set of] standards. *Id*.

In accordance with these guidelines, our superior court criminal rules provide guidance relating to the assignment of an attorney at public expense. *See* CrR 3.1. Before a court appoints an attorney for a defendant that is indigent, "the court shall

4

ensure the lawyer is in compliance with the Certification of Compliance requirement in

the Supreme Court's Standards for Indigent Defense [(SID)]." CrR 3.1(d)(4). The SID

sets forth the necessary qualifications for attorneys to represent an indigent defendant

according to the severity of the crime or type of case. SID 14.2. Thus, to satisfy the SID

and court rule, Mooneyham's attorney was required to meet certain qualifications

depending on the charges against Mooneyham.

Here, Mooneyham was charged with second degree assault, which is a violent

class B felony.[1] Under the SID, to represent a defendant accused of a class B violent

offense, an attorney must meet several requirements. Relevant to this appeal, an attorney

is required to have "been trial counsel alone or with other counsel and handled a

significant portion of the trial in two [c]lass C felony cases that have been submitted to a

jury." SID 14.2(C)(iii).

Mooneyham's attorney informed the court by declaration on February 9, 2022,

that as an attorney, he needed to complete "one more felony jury trial" before he

completed the defense standards for class B violent offenses. Clerk's Papers at 19.

Despite his lack of qualifications, he was appointed to represent Mooneyham. This was a

violation of the SID and CrR 3.1 because the attorney could not certify to the court that

he complied with certification requirements.

---

[1] RCW 9A.36.021(2)(a) (class B felony); RCW 9.94A.030(58)(a)(viii) (violent offense).

Mooneyham argues that appointing defense counsel who did not meet the qualifications required by court rule violated his due process rights. We disagree. Mooneyham does not contend that he received constitutionally ineffective assistance of counsel or that he was denied counsel altogether.

*In re Pers. Restraint of Lewis*, 200 Wn.2d 848, 523 P.3d 760 (2023) is insightful. In *Lewis*, an attorney licensed in Idaho represented clients in Washington despite the fact he was never admitted to practice in Washington. *Lewis*, 200 Wn.2d at 852. The defendant argued that appointment of an attorney who was not licensed in Washington was a denial of counsel and a violation of his due process rights, quoting *City of Seattle v. Ratliff,* 100 Wn.2d 212, 221, 667 P.2d 630 (1983). In *Ratliff*, the court held that the defendant was denied his right to counsel when an APR 9 law student was prevented from contacting his supervisor during the representation of a client. 100 Wn.2d at 221. The *Lewis* court distinguished *Ratliff* for several reasons. *Lewis*, 200 Wn.2d at 861.

First, the attorney who was licensed in Idaho was "in good standing in his state of licensure, not an APR 9 law student who ha[d] not completed their legal education, passed any bar exam, or been vetted for character and fitness to practice law, and who c[ould] practice only under limited circumstances." *Lewis*, 200 Wn.2d at 861. Second, federal courts considering this issue draw the same distinction, holding that "the Sixth Amendment [only] requires counsel to be a duly licensed attorney and does not condition constitutionality of licensure to a specific state." *Id*. at 861-62. Third, case law

interpreting the right to counsel "distinguishes between nonattorneys who practice law and attorneys who fail to follow local practice rules." *Id*. at 868. The former has been viewed as violating the Sixth Amendment while the latter "constitutes a technical violation that may demand . . . sanction[s], but *does not rise to the level* of a *constitution*[*al*] violation." *Id*. at 869 (emphasis added).

According to *Lewis* and *Ratliff*, Mooneyham was not denied counsel altogether and did not receive ineffective assistance of counsel simply because his attorney did not meet the qualifications outlined in the court rule for attorneys appointed at public expense. Nothing in the record suggests that Mooneyham's attorney did not graduate law school or was not licensed to practice law in Washington.

Nevertheless, Mooneyham contends that the "knowing appointment of an unqualified attorney is arbitrary and capricious and fundamentally unfair." Br. of Appellant at 12. We disagree. *See State v. Mack*, 89 Wn.2d 788, 793, 576 P.2d 44 (1978) (noting that violation of a court rule is not necessarily a violation of a constitutional right). The rule creates minimum qualifications for public defenders; it does not create minimum qualifications for all attorneys. Had Mooneyham hired a private attorney with no experience it would not have been a constitutional violation.

Having concluded that the error in this case resulted from a violation of a court rule, rather than a constitutional infirmity, we apply a harmless error analysis. *State v. Templeton*, 148 Wn.2d 193, 199-200, 59 P.3d 632 (2002). When the error is

nonconstitutional, reversal is required "only if there is a reasonable probability that the error materially affected the outcome of the trial." *State v. Kindell*, 181 Wn. App. 844, 853, 326 P.3d 876 (2014). The defendant carries the burden of demonstrating nonconstitutional harmless error. *See State v. Barry*, 183 Wn.2d 297, 317-18, 352 P.3d 161 (2015).

Mooneyham fails to provide any analysis on whether this issue materially affected the outcome of trial. This is likely because defense counsel had completed his final trial as required by CrR 3.1 before Mooneyham's trial began. At a hearing, while on the record, defense counsel affirmed that although the year prior he was not class B certified, he had completed a trial that achieved him class B status. Mooneyham also failed to articulate any pretrial issues that occurred before counsel became class B certified that would have materially affected the outcome of trial. As such, Mooneyham's argument fails.

2.   COMPARABILITY OF IDAHO CONVICTIONS

Mooneyham contends the trial court erred by including his Idaho conviction for grand theft in his offender score without determining that the Idaho conviction was comparable to a Washington felony.

When a defendant is sentenced, the sentence may vary based on an offender score and the seriousness of the crime. *In re Pers. Restraint of Canha*, 189 Wn.2d 359, 367, 402 P.3d 266 (2017); RCW 9.94A.510. An offender score is calculated based on the

8

offender's criminal history. *Canha*, 189 Wn.2d at 367; RCW 9.94A.525(22). If a defendant has convictions from out-of-state, "the SRA[2] directs that those offenses be classified by determining comparable Washington offenses." *Canha*, 189 Wn.2d at 367; *see also* RCW 9.94A.525(3). Generally, "the State bears the burden to prove by a preponderance of the evidence the existence and comparability of a defendant's prior out-of-state conviction." *State v. Ross*, 152 Wn.2d 220, 230, 95 P.3d 1225 (2004).

Mooneyham's offender score of "3" included one point for an Idaho conviction for grand theft. Because Mooneyham's offender score was calculated using an out-of-state conviction, the court was required to conduct a comparability analysis.

The State contends that Mooneyham stipulated that the Idaho conviction was comparable to a Washington offense. We disagree. Acknowledging the existence of an out-of-state conviction is different from stipulating to comparability. *See State v. Lucero*, 168 Wn.2d 785, 789, 230 P.3d 165 (2010) (noting that comparability was not satisfied when the defendant "did not 'affirmatively acknowledge' that his California convictions were comparable to Washington crimes."); *see also State v. Richmond*, 3 Wn. App. 2d 423, 437, 415 P.3d 1208 (2018) (noting that the defendant's "mere agreement with the State's offender score calculation and admission of the existence of an out-of-state

---

[2] Sentencing Reform Act of 1981, ch. 9.94A RCW.

conviction [was] insufficient to constitute an affirmative acknowledgment that an out-of-state conviction [met] the terms of the comparability analysis.").

Next, the State argues that we should decline to review this issue because Mooneyham failed to object below. However, "a challenge to the classification of out-of-state convictions, like other sentencing errors resulting in unlawful sentences, may be raised for the first time on appeal." *State v. Ford*, 137 Wn.2d 472, 484-85, 973 P.2d 452 (1999).

On appeal, Mooneyham contends that his Idaho conviction was not comparable to a Washington offense. The State contends that Mooneyham's conviction for grand theft was comparable to Washington's offense of possession of stolen property, specifically a firearm. Mooneyham responds that the two offenses are neither legally nor factually comparable. While this court agrees with Mooneyham that the offenses are not legally comparable, we are unable to determine whether they are factually comparable based on the record before us.

"To compare offenses, we use a two-part test." *Canha*, 189 Wn.2d at 367. First, we analyze whether the two offenses are legally comparable. *Id*. If the crimes are legally comparable, we end our analysis and the defendant's offender score will be calculated including the out-of-state offense. *Id*. If, however, the offenses are not legally comparable, we must address the second part of the test, which is factual comparability. *Id*.

10

"Legal comparability means that the elements of a foreign conviction are substantially similar to the elements of a Washington crime." *State v. Farnsworth*, 133 Wn. App. 1, 17, 130 P.3d 389 (2006). "When the crimes' elements are not the same, the offenses are not legally comparable." *Canha*, 189 Wn.2d at 367. When the "foreign crime provides alternative elements, it must contain all the elements of its Washington counterpart to be considered comparable." *Farnsworth*, 133 Wn. App. at 17. Importantly, if the elements of "the foreign law [are] broader than Washington's definition of a particular crime," the crimes are not legally comparable but may be factually comparable. *Farnsworth*, 133 Wn. App. at 17.

Mooneyham's Idaho conviction was for grand theft by receiving/possessing stolen property. Idaho Code § 18-2403(4)(c), 18-2407(1)(b)(6). Under this statute, a person commits theft

> when he knowingly receives, retains, conceals, obtains control over, possesses, or disposes of stolen property, knowing the property to have been stolen or under such circumstances as would reasonably induce him to believe that the property was stolen, and
>
> . . . .
>
> (c) Uses, conceals, or abandons the property knowing such use, concealment or abandonment probably will deprive the owner permanently of such use or benefit.

Idaho Code § 18-2403(4). In Idaho, theft is categorized into two separate degrees, either (1) grand theft, or (2) petit theft. Idaho Code § 18-2407. Mooneyham's conduct

11

constituted grand theft because the property in question consisted of "one . . . or more firearms, rifles or shotguns." Idaho Code § 18-2407(1)(b)(6).

In Washington, the offense of possessing stolen property is defined as "knowingly to receive, retain, possess, conceal, or dispose of stolen property knowing that it has been stolen and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto." RCW 9A.56.140. A comparison of both statutes is helpful to highlight the similarities as well as the differences:

| Idaho Code § 18-2403(4)(c). | RCW 9A.56.140(1) |
|---|---|
| knowingly receives, retains, conceals, <u>obtains control over</u>, possesses, or disposes of stolen property, knowing the property to have been stolen <u>or under such circumstances as would reasonably induce him to believe that the property was stolen, and</u><br><br><u>Uses, conceals, or abandons the property knowing such use, concealment or abandonment probably will deprive the owner permanently of such use or benefit</u>. | knowingly to receive, retain, possess, conceal, or dispose of stolen property knowing that it has been stolen and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto. |

The mens rea for both statutes includes "knowing" the person is performing the action as well as "knowing" the property has been stolen. Idaho Code § 18-2403(4)(c); RCW 9A.56.140(1). However, the Idaho statute includes an alternative mens rea with respect to the status of the property: "or under such circumstances as would *reasonably*

*induce* him to believe that the property was stolen." Idaho Code § 18-2403(4)(c) (emphasis added).

Despite this difference, the State contends that the mens rea for grand theft in Idaho is identical to a Washington felony where the stolen property was a firearm. Br. of Resp't at 18. The State claims that the second part of the Idaho statute's mens rea element reflects "willful blindness," which the State argues is merely circumstantial evidence of actual subjective knowledge.

In Washington, the crime of possession of stolen property requires the State to prove subjective knowledge; constructive or objective knowledge is not sufficient. *State v. Shipp*, 93 Wn.2d 510, 517, 610 P.2d 1322 (1980). Still, a jury is permitted to infer that a defendant had actual knowledge from circumstantial evidence. In particular, a jury is permitted to infer actual knowledge where the defendant "has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense." RCW 9A.08.010(1)(b)(ii).

In *Shipp*, the Supreme Court interpreted this language, allowing comparison to a reasonable person, as "only permitting, rather than directing, the jury to find that the defendant had knowledge if it finds that the ordinary person would have had knowledge under the circumstances." *Shipp*, 93 Wn.2d at 516. While the comparison with a reasonable person allows an inference, "[t]he jury must still find subjective knowledge." *Id*. at 517.

Idaho's offense of grand theft is broader than Washington's offense of possession

of stolen property because the Idaho offense can be proved with less than actual

knowledge.  While the language in Idaho's grand theft statute is similar to the definition

of "knowledge" interpreted in *Shipp*, the language is not identical.  Idaho courts have

interpreted the mens rea in the grand theft statute as requiring less than actual knowledge.

In *State v. Major*, the Idaho Supreme Court clarified the difference between an

older version of the Idaho statute and the current version, concluding that the additional

language in the current version allows for proof of something less than actual knowledge:

> Old I.C. § 18–4612 contains other substantial distinctions from the
> provisions of new I.C. § 18–2403(4) in addition to that described above.
> To violate I.C. § 18–4612, the defendant was required to *know* the property
> was stolen.  I.C. § 18–2403(4) requires that the defendant knew or under
> the circumstances would reasonably have been induced to believe that the
> property was stolen.  *Under I.C. § 18–2403(4), the state's proof problem is
> easier.*

111 Idaho 410, 420, 725 P.2d 115 (1986) (emphasis added).  Similarly, in *State v. Ralls*,

the Idaho Court of Appeals confirmed that Idaho's grand theft statute could be proved on

less than actual knowledge, noting that "[t]he disparities in value and other circumstances

were sufficient for the jury to reasonably find that [the defendants] each knew *or should

have known* that the property was stolen."  111 Idaho 485, 488, 725 P.2d 190 (1986)

(emphasis added).

There are additional differences between the Idaho and Washington statutes.  For

example, both statutes include the action of receiving, retaining, possessing, or

14

concealing the property. Idaho Code § 18-2403(4)(c); RCW 9A.56.140. However, the

Idaho statute also includes the action of "obtains control over" the property. Idaho Code

§ 18-2403(4). Furthermore, the Washington statute merely addresses withholding or

appropriating the property while the Idaho statute encompasses use, concealment, and

abandonment of it. Idaho Code § 18-2403(4)(c); RCW 9A.56.140. Finally, the Idaho

statute allows for a conviction if the defendant knows that his actions will "probably"

deprive the owner permanently while the Washington statute lacks this language. Idaho

Code § 18-2403(4)(c); *see* RCW 9A.56.140.

Because the Idaho offense is broader than the Washington offense, Mooneyham's

Idaho conviction cannot be used to calculate his offender score unless it is factually

comparable. *Farnsworth*, 133 Wn. App. at 17-18. "Factual comparability requires the

sentencing court to determine whether the defendant's conduct, as evidenced by the

indictment or information, or the records of the foreign conviction, would have violated

the comparable Washington statute." *Id*. at 18 (citations omitted). However, "the

underlying facts in the foreign record must be admitted, stipulated to, or proven beyond a

reasonable doubt." *Id*.

Based on the record before this court, we are unable to perform a factual

comparability analysis. After Mooneyham submitted his brief, the State moved to admit

additional evidence that included the information charging the Idaho offense. *See* State's

Additional Evidence. The information states that Mooneyham "did wrongfully take

15

and/or obtain and/or withhold a .44 Magnum pistol . . . knowing the property to have been stolen and/or under such circumstances as would reasonably induce him to believe that the property was stolen." *See* State's Additional Evidence at 9. However, the information also includes a charge for burglary, noting that Mooneyham "did enter into a certain house" and that it was "with the intent to commit the crime of theft." *See* State's Additional Evidence at 9.

It is thus unclear from the record before us whether Mooneyham's conviction of grand theft was based on proof that he had actual knowledge. As such, we remand for resentencing so the lower court can conduct a proper comparability analysis and allow argument from both parties. At resentencing, the court can address any LFO issues.

Affirm Mooneyham's conviction but remand for resentencing.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, A.C.J.

WE CONCUR:

_____　　_____
Cooney, J.　　　　　　　　　　　　　　Murphy, J.

16